1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY SHORTER,<br><br>    Plaintiff,<br><br>  v.<br><br>R. ROSENTHAL, et al.,<br><br>    Defendants. | Case No. 1:10-cv-00610-LJO-DLB PC<br><br>**ORDER STRIKING PLAINTIFF'S SURREPLY** (ECF No. 59)<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED** (ECF Nos. 39, 49)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

**I.     Background**

        Plaintiff Anthony Shorter ("Plaintiff") is a prisoner in the custody of the California

Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se and in

forma pauperis in this civil action pursuant to 42 U.S.C. § 1983.  This action is proceeding on

Plaintiff's Third Amended Complaint, filed April 29, 2011 against Defendants R. Rosenthal, G.

Doan, and S. Wortman for denial of access to the courts.  On September 17, 2012, Plaintiff filed a

Motion for Summary Judgment.  ECF No. 39.  Defendants filed their opposition on January 11,

2013.  ECF Nos. 4, 6, 47, 48.  The motion is submitted pursuant to Local Rule 230(l).

        On January 11, 2013, Defendants filed a Motion for Summary Judgment.  ECF No. 49.

Plaintiff filed his opposition on March 14, 2013. [1]  ECF No. 56.  On March 21, 2013, Defendants

---

[1] Plaintiff was notified by Defendants of the requirements for opposing Defendants' motion for summary judgment in compliance with *Woods v. Carey*, 684 F.3d 934, 936 (9th Cir. 2012), and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc).

1  filed their reply.  ECF No. 58.  The matter is submitted pursuant to Local Rule 230(l).[2]

2  **II.    Summary Judgment Standard**

3         Summary judgment is appropriate when it is demonstrated that there exists no genuine

4  dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law.

5  Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).

6  Under summary judgment practice, the moving party

7         always bears the initial responsibility of informing the district court of the basis for its
       motion, and identifying those portions of "the pleadings, depositions, answers to
8         interrogatories, and admissions on file, together with the affidavits, if any," which it
       believes demonstrate the absence of a genuine issue of material fact.
9

10  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

11  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in

12  reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"

13  *Id.* at 324.  Indeed, summary judgment should be entered, after adequate time for discovery and upon

14  motion, against a party who fails to make a showing sufficient to establish the existence of an

15  element essential to that party's case, and on which that party will bear the burden of proof at trial.

16  *Id.* at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's

17  case necessarily renders all other facts immaterial."  *Id.*  In such a circumstance, summary judgment

18  should be granted, "so long as whatever is before the district court demonstrates that the standard for

19  entry of summary judgment, as set forth in Rule 56(c), is satisfied."  *Id.* at 323.

20         If the moving party meets its initial responsibility, the burden then shifts to the opposing

21  party to establish that a genuine dispute as to any material fact actually does exist.  *Matsushita Elec.*

22  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

23         In attempting to establish the existence of this factual dispute, the opposing party may not

24  rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form

25  of affidavits, and/or admissible discovery material, in support of its contention that the dispute

26  exists.  Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must

27         _____

28         [2] Plaintiff filed an opposition to Defendants' Reply on April 8, 2013.  ECF No. 59.  The Court treats such filings as a surreply.  Surreplies are not permitted by the Local Rules of this Court.  *See* L.R. 230(l) (motion is deemed submitted after filing of reply).  Plaintiff's opposition to Defendants' Reply, filed April 8, 2013, is HEREBY ORDERED stricken.  Out of an abundance of caution, the Court has examined Plaintiff's surreply and finds that it would not change the analysis herein.

1    demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit

2    under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty Oil Co.*

3    *v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec. Serv., Inc.*

4    *v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

5    genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

6    party, *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem*

7    *Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

8           In the endeavor to establish the existence of a factual dispute, the opposing party need not

9    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

10   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

11   trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the

12   pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

13   *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963

14   amendments).

15          In resolving a motion for summary judgment, the court examines the pleadings, depositions,

16   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ.

17   P. 56(c).  The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all

18   reasonable inferences that may be drawn from the facts placed before the court must be drawn in

19   favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369

20   U.S. 654, 655 (1962) (per curiam)).

21          Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply

22   show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a

23   whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

24   issue for trial.'"  *Matsushita*, 475 U.S. at 586-87 (citations omitted).

25   **III.    Plaintiff's Motion for Summary Judgment**

26          Pursuant to Local Rule 260(a), "Each motion for summary judgment or summary

27   adjudication shall be accompanied by a 'Statement of Undisputed Facts' that shall enumerate

28   discretely each of the specific material facts relied upon in support of the motion and cite the

3

particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon to establish that fact." Plaintiff's Motion for Summary Judgment fails to comply with the requirements for the filing of a summary judgment motion. Plaintiff's motion has no statement of undisputed facts, and fails to cite to any exhibits or documents in support of his motion. Mere inclusion of exhibits with his motion is insufficient. Accordingly, Plaintiff's motion should be denied.[3]

## IV.   Defendants' Motion for Summary Judgment

### A.   Statement of Facts[4]

From March 24, 2007, to February 19, 2010, Plaintiff was housed at Corcoran State Prison (CSP-Cor). Ex. A to App., Pl's Dep. 21:12-15, Aug. 9, 2012. At the time of the alleged incident Defendant Rosenthal was the librarian on Facility 3-B at CSP-Cor. Ex. B to App., Rosenthal Decl. ¶ 2. Defendant Doan is a teacher on at CSP-Cor in Corcoran, California. As a teacher, Defendant Doan's responsibilities include providing both individual and group instruction, and conducting assessment and testing for inmates. Defendant Doan is responsible for supervising the conduct of the students while in the classroom. Defendant Doan also serves as the Americans with Disabilities/Disabilities Placement Program coordinator at CSP-Cor. Ex. C to App., Doan Decl. ¶ 2. Defendant Wortman is the Academic Vice Principal at CSP-Cor. In this position, defendant Wortman works under the Academic Principal, overseeing educational programs at CSP-Cor. Ex. D to App., Wortman Decl. ¶ 2.

On or around February 24, 2009, Plaintiff submitted his habeas petition with the Central District Court, challenging his conviction. Specifically, Plaintiff's petition challenged his conviction under the three strikes law, and raised issues with ineffective assistance of counsel, a Fourth Amendment violation arising from an illegal search and seizure, a Sixth Amendment violation with

---

[3] Even if Plaintiff had filed a proper motion, it appears that Defendants in their opposition raised genuine disputes of material fact. ECF No. 46. The disputes of fact are presented in Defendants' Motion for Summary Judgment as part of their Statement of Undisputed Facts, which are discussed below.

[4] The facts are taken from Defendants' Statement of Undisputed Facts. **Error! Main Document Only.**All facts are considered undisputed, unless otherwise noted. Pursuant to Local Rule 260(b) and Federal Rule of Civil Procedure 56(e), all disputes with the movant's statement of facts must be supported with citation to evidence. *See* L. R. 260(b) (parties opposing Statement of Undisputed Facts shall deny those that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial").

The Court will consider only those facts and evidence that are relevant to resolving the motion for summary judgment.

confrontation and cross-examination issues, judicial misconduct, and prosecutorial misconduct. The habeas petition was accepted and filed with the Court on March 2, 2009.  Ex. A to App., Pl's Dep. 13:15-14:3; Ex. E to App., PACER printout of case docket in *Shorter v. Adams* (C. D. Cal.), Case No. 2:09−cv−01466−MMM−FFM..[5]

Plaintiff admits that he did not know exactly when his habeas petition was due, and therefore did not have PLU status. However, when he submitted his petition on February 24, 2009, he believed that he was submitting his petition early.  Ex. A to App., Pl's Dep. 14:8-13, 16:22-23.  On March 15, 2009, the Respondent filed a motion to dismiss Plaintiff's habeas petition as untimely. Ex. E to App., PACER printout of case docket in *Shorter v. Adams* (C.D. Cal.), Case No. 2:09−cv−01466−MMM−FFM.  On July 24, 2009, Plaintiff filed his opposition to the motion to dismiss. Ex. E to App., PACER printout of case docket in *Shorter v. Adams* (C.D. Cal.), Case No. 2:09−cv−01466−MMM−FFM.

On May 17, 2010, Plaintiff filed a motion for a writ of mandate to order Defendant Rosenthal to make photocopies. Plaintiff stated that Defendants Wortman and Rosenthal have "denied him adequate access to the court by denying copying services of petitioner's exhibits to his petition for writ of habeas corpus, dated February 25, 2009."  Ex. F to App., Mot. For Writ of Mandate in *Shorter v. Adams* (C.D. Cal.), Case No. 2:09−cv−01466−MMM−FFM.

On May 28, 2010, Magistrate Judge Frederick F. Mumm issued a Report and Recommendation to dismiss Plaintiff's habeas petition as untimely. The court concluded that Plaintiff's conviction became final ninety days after the September 21, 2005 denial of the petition for review by the California Supreme Court, or on December 20, 2005. The court held that according to the Antiterrorism and Effective Death Penalty Act, Plaintiff had one year, until December 20, 2006 to file his habeas petition. Moreover, the court held that even assuming, *arguendo*, that Plaintiff was entitled to statutory tolling for the entire time that he sought collateral relief in the state courts, Plaintiff's clock expired on October 30, 2008, and therefore his petition was still untimely. Finally, the court concluded that Plaintiff was not entitled to equitable tolling because he failed to demonstrate that extraordinary circumstances beyond his control made it impossible for him to file

---

[5] The Court takes judicial notice of this action.

his habeas petition on time. Ex. E to App., PACER printout of case docket in *Shorter v. Adams* (C.D. Cal.), Case No. 2:09−cv−01466− MMM−FFM, Ex. G to App., Report and Recommendation to Dismiss Habeas Petition. The District Court judge adopted the Report and Recommendations on August 9, 2010, and dismissed Plaintiff's habeas petition.  Ex. E to App., PACER printout of case docket in *Shorter v. Adams* (C.D. Cal.), Case No.  2:09−cv−01466−MMM−FFM.

On January 23, 2012, the Ninth Circuit denied the certificate of appealability, and dismissed as moot all pending motions.  Ex. E to App., PACER printout of case docket in *Shorter v. Adams* (C.D. Cal.), Case No. 2:09−cv−01466−MMM−FFM.

On July 23, 2009, Plaintiff filed a habeas petition with the Kings County Superior Court against Defendant Rosenthal and CSP-Cor, alleging that Defendant Rosenthal was refusing to make photocopies. Ex. A to App., Pl's Dep. 9:13-16; Ex. H to App., Pl.'s Habeas Pet. filed with Kings County Superior Court.  Plaintiff's habeas petition was denied, as the court found that the prison acted properly. Ex. A to App., Pl's Dep. 9:22-25: Ex. P to App., Order Denying Pet. for Writ of Habeas Corpus.

On August 6, 2008, Plaintiff filed an inmate appeal complaining about Defendant Rosenthal's demeanor towards inmates. On August 20, 2008, Defendant Rosenthal met with Plaintiff to resolve Plaintiff's appeal at the informal level.  Defendant Rosenthal explained to Plaintiff that because of his hearing problems and a medical condition, sometimes he speaks loudly and that people often mistake him as being abrupt. Defendant Rosenthal told Plaintiff that as he and the inmates got to know each other better, things would be calmer in the library. Ex. B to App., Rosenthal Decl. ¶ 3; Ex. I to App., Plaintiff's inmate appeal, dated August 6, 2008.

On or around October 2, 2008, Plaintiff requested lined legal paper. Defendant Rosenthal denied Plaintiff's request pursuant to Department Operations Manual Supplement, Sections 14010.21 and 13010.21.2, which state that supplies should be purchased through the canteen. Although supplies are available in reasonable quantities for inmates with Priority Library User ("PLU") status, Plaintiff did not have PLU status on October 2, 2008. Ex. B to App., Rosenthal Decl. ¶ 4.

On or around October 8, 2008, Plaintiff asked Defendant Rosenthal to make a photocopy of

the "Order re Leave to File Action without Prepayment of full Filing Fee," which was an attachment to the "Order Denying Plaintiff's Application to File Action without Prepayment of Filing Fee." Defendant Rosenthal denied Plaintiff's request, because according to Department Operations Manual Supplement, Section 14010.21.2, the library does not make copies of letters or parts of documents.  Ex. B to App., Rosenthal Decl. ¶ 5.

On or around February 24, 2009, Plaintiff asked Defendant Rosenthal to photocopy exhibits for his habeas corpus petition. Defendant Rosenthal had received a supplement to the Departments Operation Manual (DOM), titled: "Chapter 10000, General Administration, Article: 14000 Technical Support, Section: 14010 Legal Matters, 1410.21 Legal copy service- December 2008." The supplement states that any evidence exhibits will be copied at the evidentiary phase of the proceedings, and that the library should not make copies of exhibits for the initial stages of a habeas petition. Therefore, Defendant Rosenthal informed Plaintiff that while he could photocopy his habeas petition, he could not photocopy the exhibits attached the petition according to CDCR policy. Ex. B to App., Rosenthal Decl. ¶ 6.

On July 30, 2009, Defendant Rosenthal received a memorandum from Principal B. Van Klaveren informing him that the supplement had not yet been approved or adopted. Defendant Rosenthal was unaware that the supplement had not gone into effect, and believed it was active CDCR policy. Ex. B to App., Rosenthal Decl. ¶ 7.

Plaintiff was granted PLU status on June 23, 2009, until July 5, 2009 for one of his habeas petition. Defendant Rosenthal made copies, as requested for Plaintiff on June 30, July 1, July 2, July 21, and August 1, 2009. During this time period, Plaintiff also accessed the library on the following dates: June 24 (2 times), June 26, June 27, June 30, and July 1, 2009.  Ex. B to App., Rosenthal Decl. ¶ 8.

Defendant Rosenthal has never denied Plaintiff legal copies because of the amount of money in his inmate trust account, nor was he even aware of the amount in his account. Pursuant to the California Code of Regulations, all copies for indigent and non-indigent inmates are made with a trust account withdrawal form, which is put on the inmate's account. If within thirty days, the inmate does not have any money, then the withdrawal is erased from the inmate's trust account.  Ex. B to

App., Rosenthal Decl. ¶ 9.

The only times that Defendant Rosenthal had Plaintiff removed from the library is when he became disruptive after Defendant Rosenthal denied his requests for photocopies or for lined paper. Defendant Rosenthal has never blocked Plaintiff's access to the Facility 3-B library. Ex. B to App., Rosenthal Decl. ¶ 10. Defendant Rosenthal has never intended to interfere with Plaintiff's access to the courts. Defendant Rosenthal has always intended to follow the California Code of Regulations and DOM in responding to Plaintiff's requests for supplies and photocopies.  Ex. B to App., Rosenthal Decl. ¶ 11.[6]

In 2008, Defendant Doan was asked to assist with responding to inmate appeals (CDCR Form 602), due to the large volume of appeals being submitted by inmates. Her sole duties included reviewing inmate appeals, interviewing individuals if necessary, and responding to the appeals at the First Level. Defendant Doan did not have any supervisory authority over academic staff. Therefore, she was not, nor has she ever been, the supervisor to librarian Rosenthal. Defendant Doan has never had the authority to direct or discipline any library staff, as Plaintiff claims. Teaching staff is separate and distinct from library services. Ex. C to App., Doan Decl. ¶¶ 3-4.

On November 17, 2008, Defendant Doan interviewed Plaintiff about his appeal, submitted on August 6, 2008. Plaintiff claimed that librarian Rosenthal had engaged in verbal confrontations with other inmates, and that he was unable to concentrate in the library. Due to the nature of Plaintiff's appeal, the matter was reassigned to Principal B. Van Klaveren. Defendant Doan had no further involvement with this appeal.  Ex. C to App., Doan Decl. ¶ 5; Ex. J to App., Def. Doan's Resp. to Pl.'s inmate appeal, dated Aug. 6, 2008.

On the same day, Defendant Doan interviewed Plaintiff about his appeal, submitted on October 8, 2008. Plaintiff alleged that librarian Rosenthal refused to copy a court order regarding leave to file an action without prepayment. After speaking with Plaintiff, Defendant Doan volunteered to copy the requested court order for Plaintiff, and he voluntarily withdrew his appeal. Ex. C to App., Doan Decl. ¶ 6; Ex. K to App., Pl.'s inmate appeal, dated Oct. 8, 2008, Mem.

---

[6] Plaintiff contends that Defendant Rosenthal's verbal abuse dated from August 20, 2008, when Plaintiff filed his first inmate appeal against Defendant Rosenthal.  Pl.'s Opp'n 4-5.  This raises a dispute as to Defendant Rosenthal's contention that he never harassed Plaintiff.  Defendants' Statement of Undisputed Facts is modified accordingly.

1   addressing Pl.'s inmate appeal, dated Nov. 17, 2008.

2        On November 20, 2008, Defendant Doan interviewed Plaintiff about his appeal, submitted on

3   October 2, 2008. Plaintiff's appeal stated that he had made a request for 28-lined legal paper and

4   envelopes, and his request was denied.  Plaintiff's appeal was denied pursuant to Department

5   Operations Manual Supplement, Sections 14010.21 and 13010.21.2, which state that supplies should

6   be purchased through the canteen. Although supplies are available in reasonable quantities for

7   inmates with PLU status, Plaintiff did not have PLU status on October 2, 2008. Therefore, the

8   referral to the canteen was appropriate pursuant to CDCR policy. Ex. C to App., Doan Decl. ¶ 7; Ex.

9   L of App., Pl.'s inmate appeal, dated October 2, 2008, and Mem. addressing Pl.'s inmate appeal,

10   dated Nov. 20, 2008.

11        On December 19, 2008, Defendant Doan issued an amended First Formal Level Response to

12   Plaintiff's appeal, submitted on October 2, 2008, about his request for 28-lined legal and envelopes.

13   In her amended response, Defendant Doan added an explanation that PLU status means that inmates,

14   who are acting as their own attorneys and who have an imminent (within 30 days) verifiable court

15   deadlines, can request Priority Legal User status and receive a minimum of two hours physical

16   access to the library per week, program permitted. The amended response also indicated that PLU

17   status means that inmates can receive certain supplies in reasonable quantities. Ex. C to App., Doan

18   Decl. ¶ 8; Ex. M to App., Mem. addressing Pl.'s inmate appeal, dated Dec. 19, 2008.

19        Aside from the photocopy Defendant Doan made for Plaintiff on November 17, 2008,

20   Plaintiff has never requested Defendant Doan to make any photocopies for him, or provide him with

21   any other library services. In turn, Defendant Doan has never refused to make photocopies for

22   Plaintiff. Further, Defendant Doan is not required to make photocopies for inmates because she does

23   not work in the library and it does not fall under her job duties. Ex. C to App., Doan Decl. ¶ 9.

24   Defendant Doan has never witnessed Defendant Rosenthal threaten, harass, or intimidate any

25   inmates or staff members, including Plaintiff.  Ex. C to App., Doan Decl. ¶ 10.

26        Defendant Wortman has no recollection of Plaintiff asking him about assisting him with his

27   legal photocopies on the Facility 3-B Yard between February 25, 2009, to March 17, 2009, nor does

28   he have any knowledge of what his photocopies were for. However, had Plaintiff inquired about

9

photocopies, Defendant Wortman would have informed him that he needed to direct his request towards the library and follow the applicable regulations for making photocopies. Defendant Wortman does not work in the library, and therefore he does not make photocopies for inmates, nor was Defendant Wortman aware of CDCR provisions regarding the same, as this does not fall under his job duties.  Ex. D to App., Wortman Decl. ¶ 3.

Further, Plaintiff alleges that Defendant Wortman gave him advice about how to reduce the number of pages that he was trying to photocopy when they allegedly met on the Facility 3-B yard. If Defendant Wortman gave this advice, it was only to assist Plaintiff. Defendant Wortman never intended to interfere with Plaintiff's access to the courts. Ex. D to App., Wortman Decl. ¶ 4. Defendant Wortman has never witnessed librarian R. Rosenthal threaten, harass, or intimidate any inmates or staff members, including Plaintiff. Ex. D to App., Wortman Decl. ¶ 5.  Defendant Wortman is informed Plaintiff submitted appeals regarding librarian R. Rosenthal's demeanor towards inmates and failure to provide legal copies. However, Defendant Wortman was not assigned to address those appeals, and does not know the specifics of his allegations. Plaintiff's appeals were instead assigned to Principal B. Van Klaveren. Therefore, it would have been inappropriate for Defendant Wortman to interview or respond to Plaintiff's appeals. Ex. D to App., Wortman Decl. ¶ 6.

Defendant Rosenthal never physically threatened Plaintiff. Instead, Defendant Rosenthal informed Plaintiff that he would remove him if he became disruptive. Plaintiff was only removed from the library two or three times. Ex. A to App., Pl.'s Dep. 24:6-9; 26:16-18. Plaintiff admits that neither Defendant Doan nor Defendant Wortman witnessed any of the alleged altercations between Plaintiff and Rosenthal. Ex. A to App., Pl.'s Dep. 30:15-17; 34:8-10.

**IV.   Analysis**

Defendants contend that they are entitled to judgment as a matter of law regarding Plaintiff's right of access to the courts, that Plaintiff is collaterally estopped from bringing this action, and in the alternative, Defendants are entitled to qualified immunity.  Defs.' Mem. P. & A. 8:12-15:8.

Inmates have a fundamental right of access to the courts. *Silva v. Di Vittorio*, 658 F.3d 1090, 1103 (9th Cir. 2011).  The right of individuals to pursue legal redress for claims that have a

10

1    reasonably basis in law or fact is protected by the First Amendment right to petition and the

2    Fourteenth Amendment right to substantive due process.  *Id.* at 1103 (citing *Snyder v. Nolen*, 380

3    F.3d 279, 291 (7th Cir. 2004)).  Inmates have a right to litigate in the courts without active

4    interference by prison officials.  *Id.*

5          Inmates also have a fundamental right of access to the courts which "requires prison

6    authorities to assist inmates in the preparation and filing of meaningful legal papers by providing

7    prisoners with adequate law libraries or adequate assistance from persons trained in the law."

8    *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *limited in part on other grounds by Lewis v. Casey*, 518

9    U.S. 343, 354 (1996).  The right "guarantees no particular methodology but rather the conferral of a

10   capability – the capability of bringing contemplated challenges to sentences or conditions of

11   confinement before the courts. . . . [It is this capability] rather than the capability of turning pages in

12   a law library, that is the touchstone" of the right of access to the courts.  *Lewis*, 518 U.S. at 356-57.

13   For any claim, a prisoner must establish that he has suffered an actual injury, a jurisdictional

14   requirement from standing that cannot be waived.  *Id.* at 349.  An "actual injury" is "actual prejudice

15   with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to

16   present a claim."  *Id.* at 348 (citation and internal quotation omitted).

17         Even construing the undisputed facts in the light most favorable to Plaintiff, Plaintiff fails to

18   raise a genuine dispute of material fact as to his access to the courts claim.  Based on the undisputed

19   facts, Defendant Rosenthal refused to copy Plaintiff's exhibits submitted in support of his petition

20   for writ of habeas corpus.[7]  However, there is no actual injury to Plaintiff.  Despite the denial,

21   Plaintiff was able to submit his petition for writ of habeas corpus.  Plaintiff's petition for writ of

22   habeas corpus was denied as untimely filed, not for failure to provide exhibits.  Defendant

23   Rosenthal's denial of copies for Plaintiff's exhibits did not affect Plaintiff's untimely filing of his

24   petition for writ of habeas corpus.  There is no genuine dispute of material fact as to whether

25   Plaintiff suffered an actual injury because of Defendant Rosenthal's actions.

26         Defendant Doan's responses to Plaintiff's inmate appeals did not result in actual injury to

27

28   _____
     [7] Plaintiff cites to a confidential document that was part of an investigation into Defendant Rosenthal's conduct
     in failing to copy Plaintiff's exhibits in support of his petition for a writ of habeas corpus.  It was concluded that
     Defendant Rosenthal was in error for failing to copy the exhibits as requested by Plaintiff. Defendants do not deny that
     Defendant Rosenthal failed to copy Plaintiff's exhibits.

1  Plaintiff's access to courts.  Plaintiff contends that Defendant Doan was aware of Defendant

2  Rosenthal's past issues with failure to provide copies for other inmates.  Pl.'s Opp'n 13-14.

3  Defendant Doan did not provide Plaintiff copies with his exhibits in support of his petition for writ

4  of habeas corpus.  However, Plaintiff fails to demonstrate how Defendant Doan was aware of

5  Defendant Rosenthal's failure to copy Plaintiff's exhibits prior to Plaintiff's filing of his petition.  As

6  stated previously, Defendant Rosenthal's failure to copy exhibits in support of Plaintiff's petition did

7  not violate Plaintiff's access to the courts.

8          Defendant Wortman's lack of responsiveness to Plaintiff's complaints about Defendant

9  Rosenthal does not raise a genuine dispute of material fact with regards to a denial of access to the

10  courts.  Plaintiff contends that he sent a letter to Defendant Wortman complaining of Defendant

11  Rosenthal's conduct on February 25, 2009, and March 4, 2009, after Defendant Rosenthal refused to

12  copy Plaintiff's exhibits.  Pl.'s Opp'n 21-22.  Defendant Wortman was not notified of Defendant

13  Rosenthal's actions until after they had occurred, and after Plaintiff had filed his petition.  *Cornett v.*

14  *Donovan*, 51 F.3d 894, 898 (9th Cir. 1995) (finding legal assistance for access to the courts only

15  during pleading stage of habeas or civil rights action).  Defendant Wortman could not have

16  participated in a denial of Plaintiff's access to the courts after Plaintiff had already filed his petition.

17  As stated previously, Defendant Rosenthal's failure to copy exhibits in support of Plaintiff's petition

18  did not violate Plaintiff's access to the courts.

19          There is no genuine dispute of material fact as to Plaintiff's access to the courts claim.

20  Defendants Rosenthal, Doan, and Wortman are entitled to judgment as a matter of law.[8]

21  **V.      Conclusion and Recommendation**

22          Based on the foregoing, it is HEREBY RECOMMENDED that:

23      1.  Plaintiff's Motion for Summary Judgment, filed September 17, 2012, should be denied;

24      2.  Defendants' Motion for Summary Judgment, filed January 11, 2013, should be granted;

25          and

26      3.  Judgment should be entered for Defendants and against Plaintiff as to Plaintiff's sole

27

28  _____
    [8] Defendants also raise arguments of collateral estoppel and qualified immunity.  Because the undersigned finds
    that there is no genuine dispute of material fact as to Plaintiff's access to the courts claim, and that Defendants are
    entitled to judgment as a matter of law, these affirmative defenses will not be further addressed.

12

1    claim for denial of access to the courts.

2         These Findings and Recommendations will be submitted to the United States District Judge

3    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days**

4    after being served with these Findings and Recommendations, the parties may file written objections

5    with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and

6    Recommendations."  A party may respond to another party's objections by filing a response within

7    **fourteen (14) days** after being served with a copy of that party's objections.  The parties are advised

8    that failure to file objections within the specified time may waive the right to appeal the District

9    Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

10

11   IT IS SO ORDERED.

12       Dated:   __April 24, 2013__              _____ /s/ *Dennis L. Beck*

13                                          UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13